Michael LANE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–04–00412–CR, 14–04–00413–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 15, 2005.

Henry L. Burkholder, III, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Michael Lane appeals from two aggravated sexual assault convictions. After a jury convicted him in two separate cause numbers and found the enhancement paragraph to be true, he was sentenced to life imprisonment. Appellant asserts the trial court erred by failing to grant his request for separate jury trials, denying his motion to suppress, and admitting hearsay testimony under the excited utterance exception. Appellant also challenges the legal and factual sufficiency of the evidence to support his convictions. We affirm.

### I. Factual and Procedural Background

In late 2002, Ms. Ferrell, the complainant's mother, planned to leave the complainant ("A.F.") and another, younger daughter at appellant's home for the weekend.[1] A.F. had already left for appellant's home when the younger daughter began crying, pleading that her mother not make her go to appellant's house. When Ms. Ferrell questioned this response, the younger daughter revealed that she had seen appellant on top of A.F., who was naked at the time. She also stated that "bad things had happened to her sister." Ms. Ferrell, very concerned, called appellant's home, but appellant's girlfriend was already on the way to Ms. Ferrell's home with A.F. When A.F. returned home, she confirmed the heinous acts, saying that appellant forced her to engage in oral sex and vaginal intercourse with him. Ms. Ferrell called the police in Bryan, Texas, where

---

1. Appellant is Ms. Ferrell's cousin. Appellant's girlfriend, whom Ms. Ferrell considered part of the family, sometimes took care of Ms. Ferrell's children, including the complainant.

she was living with her daughters at the time, and the Bryan Police Department contacted the Houston Police Department. Officer Valenta of the Houston Police Department then executed a search warrant for appellant's apartment and recovered, among other things, several photographs. The photographs show the unclothed A.F. alone, and they show appellant engaged in various sexual acts with A.F. According to A.F.'s mother, the photographs are of A.F. when she was between six and ten years old.

Appellant was arrested and the State charged him with aggravated sexual assault, enhanced by a prior felony conviction for the same crime. In cause number 933,046 (appellate cause number 14–04–00412–CR), the indictment charged one type of sexual assault:

> Michael Lane ... on or about October 27, 2002, did then and there unlawfully, intentionally and knowingly cause the sexual organ of [complainant], a person younger than fourteen years of age and not the spouse of the Defendant, to contact the sexual organ of Michael Lane.... Before the commission of the offense alleged above ... the Defendant was finally convicted of the felony of aggravated sexual assault.

In cause number 964,815 (appellate cause number 14–04–00413–CR), the indictment charged a second type of sexual assault:

> Michael Lane ... on or about September 27, 2002, did then and there unlawfully, intentionally and knowingly cause the penetration of the mouth of [complainant], a person younger than fourteen years of age and not the spouse of the Defendant, with the sexual organ of the Defendant. Before the commission

of the offense alleged above ... Defendant was finally convicted of the felony of aggravated sexual assault.

The jury found appellant guilty in both cause numbers. Appellant pleaded true to the enhancement paragraph [2] and the jury sentenced him to life imprisonment.

On appeal, appellant raises the same initial seven points of error in both cause numbers. First, appellant contends the trial court erred by failing to grant his pretrial request for separate jury trials in each cause number. Second, appellant contends the trial court erred by denying his motion to suppress, in which appellant urged the trial court to exclude the items seized pursuant to the search warrant for his apartment. Third, appellant asserts the trial court erred in admitting hearsay testimony over his objection.[3] In his fourth and fifth issues, appellant argues the evidence is legally and factually insufficient because A.F. was not credible. In his sixth and seventh issues, appellant contends the evidence is legally and factually insufficient to show the State had jurisdiction because the State did not prove that any element of the offense took place within Harris County. Appellant also raises two additional points of error in cause number 14–04–00412–CR. In these final two issues, appellant contends the evidence is legally and factually insufficient because the State did not prove appellant caused A.F.'s sexual organ to contact his own. With the exception of the challenges to the State's jurisdiction, which we address last, we address each of appellant's contentions in turn.

## II. Analysis

### A. Separate jury trials

---

**2.** Appellant was previously convicted of the felony offense of aggravated sexual assault of a child.

**3.** Appellant waived his right to counsel and represented himself at trial with standby back-up counsel.

■ Initially, appellant urges this court to find that the trial court erred by overruling appellant's request for separate jury trials and that this error violated appellant's state constitutional right to a trial by jury. *See* Tex. Const. art. I, § 10 (providing for right to trial by jury). As mentioned above, the State charged appellant in two indictments and cause numbers with aggravated sexual assault upon A.F., the first for causing A.F.'s sexual organ to contact appellant's sexual organ, and the second for causing appellant's sexual organ to penetrate A.F.'s mouth. The Texas Penal Code provides that "a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Penal Code § 3.02(a). The Code defines a criminal episode as the commission of two or more offenses if "the offenses are the repeated commission of the same or similar offenses." Tex. Penal Code § 3.01(2).

■ Generally, a defendant is entitled to severance if he timely objects to the joinder. *Salazar v. State,* 127 S.W.3d 355, 364 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (citing Tex. Penal Code § 3.02, § 3.04(a)) ("However, a defendant generally has the right to demand that cases consolidated under section 3.02 be severed for trial."); *see also Wedlow v. State,* 807 S.W.2d 847, 851 (Tex.App.-Dallas 1991, pet. ref'd) ("[I]f a defendant timely objects to the trial of multiple indictments in a single trial, he is entitled to severance.") (citing *Ex parte Quintanilla,* 151 Tex. Crim. 328, 207 S.W.2d 377, 378 (1947)). However, the defendant's right to severance is limited by section 3.04(c) of the Texas Penal Code. *Salazar,* 127 S.W.3d at 364 (citing Tex. Penal Code § 3.04(c)). Section 3.04(c) provides that the defendant's right to severance does not apply to offenses joined pursuant to section 3.03(b)(2) unless the court determines the defendant or the state would be unfairly prejudiced by the joinder. *Id.* (citing Tex. Penal Code § 3.04(c), § 3.03(b)(2)); *see also Matthews v. State,* 152 S.W.3d 723, 730 (Tex.App.-Tyler 2004, no pet.) ("A defendant's right to sever two or more cases that have been consolidated or joined for trial does not apply to a prosecution for . . . aggravated sexual assault of a victim under seventeen years of age unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses.") (citing Tex. Penal Code § 3.04(c)). Section 3.03(b)(2), in turn, applies to certain sexual offenses against victims younger than seventeen years old, such as those in appellant's case. Tex. Penal Code § 3.03(b)(2)(A).

■ Therefore, when the State joins certain sexual offenses against victims under seventeen years old, a defendant's right to severance is limited and severance is not required in the absence of unfair prejudice. *See id.* §§ 3.03(b)(2)(A), 3.04(c). Appellant claims he demonstrated that he would be unfairly prejudiced by the joinder, but the record does not support this claim. Before trial, appellant objected to the State's joinder of the two offenses. However, appellant never explained, at the trial court level nor on appeal, how the joinder would cause him unfair prejudice. Because appellant did not show that he would be unfairly prejudiced by the joinder of these two offenses in a single trial, we conclude the trial court did not err in refusing appellant's request for severance and overrule his first point of error. *See id.* § 3.04(c) (providing for a right of severance only when "the defendant or the state would be unfairly prejudiced by a joinder of offenses.").[4]

4. Appellant never raised the constitutional challenge to section 3.04(c) that he makes on

## B. Motion to suppress

In his second point of error, appellant contends the trial court erred by failing to grant his motion to suppress; he alleges the affidavit supporting the search warrant for his apartment "failed to state sufficient facts constituting probable cause." However, the motion to suppress did not contain this ground as a basis for suppressing the evidence. Instead, the motion urged the trial court to exclude all evidence seized in the search of appellant's apartment because the search violated article 18.06 of the Texas Code of Criminal Procedure.[5] *See* Tex.Code Crim. Proc. art. 18.10 (providing proper procedure for execution of search warrants). Similarly, when appellant argued his motion, he never raised the alleged insufficiency of the affidavit to establish probable cause for the search warrant. Instead, appellant contended the search exceeded the search warrant's scope.

To preserve error for appellate review, a party must object in a timely and specific manner. Tex.R.App. P. 52; *Cornealius v. State*, 870 S.W.2d 169, 174 (Tex. App.-Houston [14th Dist.] 1994), *aff'd*, 900 S.W.2d 731 (Tex.Crim.App.1995) (citing Tex.R.App. P. 52; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991) (en banc)). Nothing is preserved for appellate review if the issue raised on appeal does not comport with the objection made at trial. *Cornealius*, 870 S.W.2d at 174 (citing *Coffey v. State*, 796 S.W.2d 175, 179 (Tex.Crim.App.1990) (en banc); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App. 1986) (en banc)). Appellant's issue on appeal—that the supporting affidavit is insufficient—does not comport with the objection he made at trial, which was based upon article 18.10 of the Texas Code of Criminal Procedure.[6] Therefore, appellant

---

appeal in the court below; therefore, we do not address that issue. *See Cornealius v. State*, 870 S.W.2d 169, 174 (Tex.App.-Houston [14th Dist.] 1994), *aff'd*, 900 S.W.2d 731 (Tex. Crim.App.1995) (citing *Coffey v. State*, 796 S.W.2d 175, 179 (Tex.Crim.App.1990) (en banc); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986) (en banc)).

5. Specifically, appellant contended the evidence should be excluded because 1) he was absent during the search, 2) he did not give consent, 3) he did not receive a complete copy of the warrant nor an inventory of the items seized, and 4) the evidence was not obtained incident to his lawful arrest. Article 18.10 requires a peace officer who executes a warrant to present a copy of the warrant to the owner of the place to be searched and to prepare a written inventory of the items taken. Tex.Code Crim. Proc. § 18.10(b). If no one is present, the peace officer must leave a copy of the warrant and the inventory. *Id.*

6. Even if appellant had preserved this complaint for appeal, it would not merit reversal. Appellant has not overcome the presumption of the validity of the affidavit supporting his search warrant. *See Cates v. State*, 120 S.W.3d 352, 355 (Tex.Crim.App.2003) ("An

affidavit supporting a search warrant begins with a presumption of validity...."). As a reviewing court, we give "great deference to a magistrate's determination that an affidavit establishes the existence of probable cause." *Borsari v. State*, 919 S.W.2d 913, 917 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd). The affidavit supporting the search warrant for appellant's apartment was that of the police officer who took statements from Ms. Ferrell and A.F. The officer's affidavit reflected his belief—based upon the statements taken from A.F. and her mother and based upon his personal experience in working on sexual assault cases for seven years—that appellant was keeping photographs on his computer that depicted himself engaged in various sexual acts with A.F. and that depicted the unclothed A.F. alone. The magistrate is entitled to rely upon source information supplied by average citizens and law enforcement officers to determine that probable cause exists. *State v. Anderson*, 917 S.W.2d 92, 96 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (citing *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)). We could not say the trial court abused its discretion in admitting the photographs obtained as a result of this search warrant. *See*

has not preserved this issue for appeal, and we overrule his second point of error.

### C. Hearsay testimony

■ In his third point of error, appellant contends the trial court erred by admitting hearsay testimony over his objection.[7] The State contends these statements were admissible as exceptions to the hearsay rule because they were excited utterances.

During Ms. Ferrell's direct examination, the trial court allowed Ms. Ferrell to testify about statements her younger daughter made about seeing appellant on top of A.F. while A.F. was naked. Ms. Ferrell testified, "She told me that he told her to go outside and look—watch for [appellant's girlfriend]. She said it took too long. She came back inside. That he was on her sister." In response to further questioning, Ms. Ferrell testified that her younger daughter told her that "[s]he saw her sister naked and [appellant] was on top of her sister."

### 1. Hearsay and the excited utterance exception

■ An excited utterance is an exception to the general rule prohibiting hearsay statements from being admitted. *See* Tex.R. Evid. 802 (providing hearsay is not admissible except as provided by statute or rules); Tex.R. Evid. 803(2) (providing that excited utterances are not excluded by the hearsay rule). To qualify as an excited utterance, a statement must relate to a startling event or condition and be made while the declarant is still under the stress or excitement caused by the event or condition. *Id.* In Texas, the startling event or condition need not be the crime itself. *See Ross v. State*, 154 S.W.3d 804, 809 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) ("[T]he startling occurrence that triggers the excited utterance need not necessarily be the crime itself.") (citing *Salazar v. State*, 38 S.W.3d 141, 154–55 (Tex.Crim.App.2001); *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet. ref'd)); *see also Hunt v. State*, 904 S.W.2d 813, 816–17 (Tex.App.-Fort Worth 1995, pet. ref'd) (holding that the exciting event occurred when a sexual assault victim viewed a television news program and learned that she could have become pregnant).

■ "The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable [her] to fabricate information." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex.Crim.App.2005) (citing *Zuliani v. State*, 97 S.W.3d 589, 595–96) (Tex.Crim.App.2003)). In deciding if a declarant is still dominated by her emotions from viewing or experiencing the startling event, the trial court may consider the following factors: 1) the length of time between the event or condition and the statement, 2) the nature of the declarant, 3) whether the statement is made in response to a question, and 4) whether the statement is self-serving. *See Apolinar*, 155 S.W.3d at 187 (citing *Zuliani*, 97 S.W.3d at 595–96). Although a court may consider these factors, the critical determination in the admissibility of the statement

*Borsari*, 919 S.W.2d at 916 ("An appellate court will not reverse the trial judge's decision on the admissibility of the evidence unless the judge clearly abused his discretion.") (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990) (en banc)).

7. Appellant's objection was based solely on the general rule against admitting hearsay testimony. He did not object based on the confrontation clause. *See Apolinar v. State*, 155 S.W.3d 184, 186 n. 2 (Tex.Crim.App. 2005) (recognizing appellant's objection was limited to hearsay and did not raise potential confrontation clause violation).

is whether the declarant was still dominated by the emotions of the event. *See Couchman*, 3 S.W.3d at 159 ("Although the other factors are relevant, the critical issue is whether the declarant made the statement while dominated by the emotion arising from a startling event or condition.") (citing *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992) (en banc); *Hunt*, 904 S.W.2d at 816).

When a trial court decides to admit an out-of-court statement under an exception to the hearsay rule, the court is exercising its discretion. *See Jackson v. State*, 110 S.W.3d 626, 633 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim.App.1995) (en banc)). We will not overturn this type of decision absent a clear abuse of that discretion. *See id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim.App.1990) (en banc)); *see also Lawton*, 913 S.W.2d at 553 ("The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion."). Thus, the question before us regarding the admittance of the younger daughter's statements is whether the trial court clearly abused its discretion. *See Jackson*, 110 S.W.3d at 633.

The event in question occurred when the younger sister learned that A.F. had been returned to the home of the man who sexually assaulted A.F. *See Ross*, 154 S.W.3d at 809 (stating that startling event occurred when declarant learned that his relative had killed someone).[8] Initially, we will apply the four factors the Court of Criminal Appeals noted in *Apolinar*, and then we will broaden our inquiry to the larger question—whether the declarant was still dominated by emotions generated by the event so that her statements were likely to be truthful.

## 2. Application of the factors

The first factor a court may consider is the length of time elapsing between the event and the excited utterance. *See Apolinar*, 155 S.W.3d at 187. This record does not reveal the precise length of time that elapsed between Ms. Ferrell's statement that A.F. was at appellant's home and the statements of the younger sister. However, it appears that the younger sister's statements were in immediate response to what her mother told her.

The second factor considers the nature of the declarant. *See id.* Here, two facts are important. First, the declarant was quite young, probably eight or under. Second, the declarant was extremely agitated. When asked about her other daughter's demeanor at the time of the statements, Ms. Ferrell testified: "She was crying. She was upset [about] the safety of her sister. She didn't want her sister to go. She said bad things had happened to her sister and that's why she didn't want her to go."

The third factor affecting admission is whether the statements were in response to a question. *See id.* Appellant argues on appeal that it is "apparent" that the statements were in response to Ms. Ferrell's "specific questions and inquiries." No record cite follows, nor does our review of the record reveal that this is "apparent." The initial response—that the younger daughter began crying—was a spontaneous reaction to being told that her sister was at appellant's house. Even if her

---

**8.** Clearly, learning that one's sister has been returned to the home of the man who sexually assaulted her is a startling event. We believe that this is particularly true when, as in this case, the younger sister apparently witnessed appellant sexually assaulting her sister, and was about to be turned over to appellant's care herself.

subsequent statements were in response to Ms. Ferrell's questions, the interaction between the mother and her young daughter appears to have none of the calmness of a controlled inquiry and all of the urgency of one fearful that a loved one is being hurt.[9] In other words, this particular conversation does not resemble one in which either party spent any time reflecting on their questions or answers.

The fourth factor is whether the statements were self-serving. *See id.* Appellant does not argue that they are self-serving, and nothing earmarks them as being self-serving.

Overall, the four factors favor admitting the statements. As we explain below, the broader question, whether A.F.'s younger sister was still dominated by the emotions generated when she learned of A.F.'s whereabouts, and whether she was still capable of fabricating information when she made the statements, also supports the ruling admitting the statements.

It appears that A.F.'s younger sister was between seven and nine years old when she and her mother each were startled by the other's statements. Clearly, the younger sister was emotionally distraught when she made the statements. She reacted spontaneously and immediately upon being told that A.F. was at appellant's and that she would join them shortly. *See Harnish v. State*, 9 Md.App. 546,

266 A.2d 364, 365 (1970) (recognizing that "spontaneous and instinctive utterances, made without opportunity or time for reflection or deliberation, are more likely to produce a true and accurate picture of the transaction or event of which they form a part"); *Lancaster v. People*, 200 Colo. 448, 615 P.2d 720, 723 (1980) (stating the spontaneous character of a statement has critical significance). Because of her "tender years," this was not an event she was likely to have told her mother about initially, *see State v. Thomas*, 119 N.C.App. 708, 460 S.E.2d 349, 352 (1995) (stating it is often unlikely a child will report an incident involving sexual assault to anyone but the mother); *State v. Moats*, 156 Wis.2d 74, 457 N.W.2d 299, 309 (1990) (same) (citing *State v. Padilla*, 110 Wis.2d 414, 329 N.W.2d 263, 266 (1982)); *People v. White*, 198 Ill.App.3d 641, 144 Ill.Dec. 722, 555 N.E.2d 1241, 1249 (1990) (same); *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833, 841 (1985) (same); Judy Yun, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum. L.Rev. 1745, 1756–57 (1983) (providing reasons a young sex abuse victim may not immediately report the abuse), nor was it an incident she could have fabricated on her own.

All of these considerations point to the likelihood of accuracy rather than fabrication and support the trial court's ruling.[10]

---

9. Contrast this with the "controlled inquiry" situation in *Hughes v. State*, 128 S.W.3d 247 (Tex.App.-Tyler 2003, pet. ref'd). That case involved a fifteen-year-old declarant, much older than the declarant in this case. *See id.* at 254. Also, in *Hughes*, the statements, which the court described as narrations, occurred during the course of two extended police interviews, while this case involves just one brief conversation between a mother and her young daughter. *See id.* Finally, in *Hughes*, the declarant already had been forewarned about the purpose of the interviews and previously had discussed the history of

abuse and the possibility of reporting that abuse with a family member. *See id.* at 254, 250. In this case, none of these things occurred. These differences distinguish the present case from *Hughes*. *See id.* at 254 (stating it was "impossible to conclude that [the declarant's] statements were made without opportunity for reflection or deliberation").

10. Even if we were wrong and the statements should not have been allowed, the substance of the younger daughter's testimony—exactly what "bad things" happened to A.F. at appel-

We overrule appellant's third point of error.

### D. The legal and factual sufficiency challenges

In his fourth and fifth points of error, appellant claims the evidence is legally and factually insufficient because A.F.'s testimony was not credible. In appellant's eighth and ninth points of error, he asserts the evidence is legally and factually insufficient to prove he caused A.F.'s sexual organ to contact his own. We address these four sufficiency challenges together.

 We employ familiar standards of review for legal and factual sufficiency challenges. In a legal sufficiency challenge, we review the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found all elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a factual sufficiency challenge, we view the evidence in a neutral light to determine if the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex.Crim.App.2004). The evidence may be factually insufficient in two scenarios. First, the evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, the evidence that is contrary to the verdict may be so strong that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85.

### 1. Legal sufficiency

 With these standards in mind, we turn to appellant's legal sufficiency challenge based upon A.F.'s alleged lack of credibility. Appellant asks us to reverse his conviction because the State did not offer physical evidence to corroborate A.F.'s testimony and because A.F. was not asked when the alleged offenses took place. With regard to appellant's challenge to A.F.'s credibility, we begin by noting that "[t]he jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony." *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000) (en banc) (citing *Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim.App.1996)). A.F.—only eleven years old when she gave her direct testimony and was cross-examined by appellant— stated that she knew the difference between telling the truth and telling a lie, and also that she understood how important it was for her to tell the truth. When appellant cross-examined her, A.F. repeatedly stated that she was not lying.

With regard to appellant's assertion that the evidence is legally insufficient to prove he caused A.F.'s sexual organ to contact his own, the record reflects the following. A.F. testified about what appellant did to her when she was nine years old, including that he "put his private part" into her vagina. She also testified that he put his penis into her mouth.[11] A.F. told the jury

---

lant's house—was presented to the jury through A.F. and through pictures found in appellant's house. *See* Tex.R.App. P. 44.2(b); *Jensen v. State,* 66 S.W.3d 528, 535 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (holding any error in admission of videotape was not harmful in sexual assault cause because "the same information came in elsewhere"); *see also Matz v. State,* 21 S.W.3d 911, 912 (Tex. App.-Fort Worth 2000, pet. ref'd) (stating "it

is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence").

11. The complainant's testimony at trial was consistent with what she reported to the Childrens' Assessment Center. According to Dr. Lahotia of the Childrens' Assessment Center, the complainant stated appellant made her

that these things occurred in appellant's bed at his home and that appellant and his girlfriend took photographs. A.F. positively identified appellant during her testimony. The photographs seized from appellant's apartment were also introduced into evidence. These photographs show appellant and A.F. engaged in the very activities she described.

The testimony of A.F., standing alone, is sufficient to support appellant's convictions. TEX.CODE CRIM. PRO. ANN. § 38.07; *see Jensen v. State,* 66 S.W.3d 528, 534 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) ("The testimony of a victim, standing alone, even when the victim is a child, is sufficient to support a conviction for sexual assault."); *see also Satterwhite v. State,* 499 S.W.2d 314, 315 (Tex.Crim.App.1973) (holding that victim's testimony that appellant placed "his male organ into her private parts" was sufficient to sustain conviction); *Sanchez v. State,* 479 S.W.2d 933, 940 (Tex.Crim.App.1972) (holding that victim's affirmative answer to question about whether defendant "put his private part in your private part," along with corroborating medical testimony, was sufficient to establish penetration). In addition, the photographs corroborate A.F.'s testimony, depicting the exact acts that appellant argues the evidence is legally insufficient to prove.

We conclude the evidence was legally sufficient and overrule appellant's challenges based upon A.F.'s alleged lack of credibility and the State's failure to prove contact.

### 2. Factual sufficiency

▮ Appellant also raises factual sufficiency challenges based upon A.F.'s alleged lack of credibility and the State's purported failure to prove contact. Even when we view the evidence that supports the verdict and is detailed above in a neutral light, we conclude it is not too weak to support a finding of guilt beyond a reasonable doubt. *See Zuniga,* 144 S.W.3d at 484. The jury was entitled to believe A.F.'s testimony and decide what weight to give the photographs and other evidence. *See Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000) (en banc) ("Any [factual sufficiency] evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony."). Appellant has not cited any evidence that undermines A.F.'s credibility; at most, appellant points out that there is no physical evidence to corroborate her testimony. *See Tinker v. State,* 148 S.W.3d 666, 669 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (concluding evidence of complainant's testimony alone was factually sufficient despite lack of physical evidence) (citing *Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App. [Panel Op.] 1978)). We reject appellant's contention that A.F. was so lacking in credibility as to render the evidence factually insufficient to support his conviction.

The record also belies appellant's assertion that A.F. never testified about when these events occurred.[12] A.F. testified ap-

take her clothes off before getting on top of her and that he "put his penis in me." During the same assessment, the complainant also stated that appellant "made me suck his private part."

**12.** We note that the State is not required to prove the exact date the offenses occurred. The indictments in these cases charged that the offenses occurred "on or about September 27, 2002" and "on or about October 27, 2002." It is well settled that, "when an indictment alleges that an offense occurred 'on or about' a particular date, the State is not bound by the date alleged, and may prove any offense of the character alleged, within the period covered by the applicable statute of limitations." *Garcia v. State,* 981 S.W.2d 683, 685 (Tex.Crim.App.1998) (en banc) (cit-

pellant assaulted her many times and that the last assault occurred during October when she was nine years old. Ms. Ferrell testified that the assaults occurred in the latter part of October, 2002. Officer Valenta, who spoke with Ms. Ferrell and A.F. before executing the search warrant at appellant's apartment, said A.F. told him an assault occurred the weekend or week before Halloween. Appellant has not cited any contrary evidence, nor have we found contrary evidence in the record that is so strong the beyond-a-reasonable-doubt standard could not have been met. *See Zuniga*, 144 S.W.3d at 484–85. We conclude the evidence is also factually sufficient and overrule appellant's factual sufficiency challenges.

Because we have concluded the evidence is legally and factually sufficient, we overrule appellant's fourth, fifth, eighth, and ninth points of error.

### E. Legal and factual sufficiency—jurisdiction over offense

In his sixth and seventh points of error, appellant contends the State failed to prove it had jurisdiction because there is no evidence or insufficient evidence that any element of the offenses occurred within Texas's jurisdiction. *See* TEX. PENAL CODE § 1.04(a)(a) (providing that Texas has jurisdiction over an offense if the conduct that is an element of the offense occurs inside this state).

#### 1. Legal sufficiency

We begin by reviewing the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found that the offenses took place in Texas. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The following evidence supports the jury's verdict. A.F. testified

that some of the assaults occurred at appellant's home and some may have occurred at her mother's home. During Ms. Ferrell's testimony, she looked at the photographs taken from appellant's computer that depicted the crimes for which appellant was convicted. Ms. Ferrell testified that the photographs were taken at two locations—her home and the appellant's home. Ms. Ferrell testified that both places are in Houston, Texas. We conclude the evidence is legally sufficient to allow a rational jury to find, beyond a reasonable doubt, that the offenses took place within the territorial jurisdiction of this state. We overrule appellant's sixth point of error.

#### 2. Factual sufficiency

Viewing the same evidence in a neutral light, a jury would be rationally justified in finding guilt beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484 (stating evidence, when viewed in a neutral light, may be too weak to support the finding of guilt). In support of his factual sufficiency challenge, appellant points to the following ambiguities in the prosecution witnesses' testimony. Ms. Ferrell stated that she sometimes took A.F. to stay at the appellant's apartment home, but that she also sometimes took her to "another location" where appellant stayed, on Westview. The complainant testified that the assaults were "sometimes at his house." Based on these statements, appellant argues the assaults may have occurred at some unknown location that was outside this state's jurisdiction. However, appellant cites no evidence that his home on Westview or this "other location" is outside the territorial jurisdiction of this state. And, Officer Valenta testified that Westview was also located in Harris County, Texas.

ing *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex.Crim.App.1997) (en banc); *Mireles v.*

*State*, 901 S.W.2d 458, 459 (Tex.Crim.App. 1995) (en banc) (plurality opinion)).

We do not find that these ambiguities constitute contrary evidence that is so strong that the beyond-a-reasonable-doubt standard could not have been met. *See id.* at 484–85. We conclude the evidence that these offenses took place within the state's jurisdiction is factually sufficient.

## Conclusion

Because we have reviewed and overruled each of appellant's contentions, we affirm both of his convictions.