

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00033-CR

DONALD COLEMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 16F1074-005

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Donald Coleman was originally indicted by a Bowie County grand jury for one count of indecency with a child by sexual contact[1] in cause number 16F0639-005, alleged to have been committed on or about June 17, 2016, against Mary Thomas[2] (the 2016 Offense). On December 15, 2016, less than a month before cause number 16F0639-005 was scheduled for jury trial, the grand jury issued a new indictment in cause number 16F1074-005 charging Coleman again with the 2016 Offense, and charging him with two additional counts of indecency with a child by sexual contact alleged to have been committed against Thomas on or about June 15, 2014 (the 2014 Offenses). After his motion for continuance and his motion for severance were denied, a jury trial on all three counts was held on January 10, 2017. The jury found Coleman guilty on all three counts, and assessed punishments of twenty years' imprisonment for the 2016 Offense, and fifteen years' imprisonment and ten years' imprisonment for the 2014 Offenses, all of which the trial court imposed to be served consecutively.

On appeal, Coleman asserts that the trial court erred (1) in denying his motion for continuance, and (2) in denying his motion for severance of the 2014 Offenses. Coleman also asserts that insufficient evidence supports his conviction for the 2016 Offense. Since we find no abuse of discretion by the trial court and since we find that sufficient evidence supports Coleman's conviction, we will affirm the trial court's judgment.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011).

[2]We refer to the victim and her sister by pseudonyms. *See* TEX. R. APP. P. 9.10(a)(3).

## I.    Procedural Background

Coleman asserts, and the State does not dispute, that Coleman was originally indicted for the 2016 Offense in cause number 16F0639-005.[3] After the case was set for jury trial to commence on January 10, 2016, the grand jury re-indicted Coleman for the 2016 Offense and added the 2014 Offenses in a single indictment in cause number 16F1074-005, on December 15, 2016. On December 19, 2016, Coleman filed a motion for continuance complaining of the addition of the 2014 Offenses and contending that he could not be ready for the January 10 trial setting. Although he acknowledged that he received discovery on the 2014 Offenses on December 16, Coleman maintained that the new charges were of a serious and complex nature. He complained that the State had also informed him of its intent to introduce evidence of sexual assaults committed by Coleman against Thomas' sister, alleged to have occurred in 2008 and 2009, which involved witnesses and reports from both Texarkana and Fort Worth.

On January 3, 2017, Coleman filed his motion for severance asking the trial court to sever the trial of the 2014 Offenses. Coleman asserted that he had a right to severance under Section 3.04 of the Texas Penal Code because he would be unfairly prejudiced by the joinder of the 2014 Offenses. *See* TEX. PENAL CODE ANN. § 3.04(c) (West 2011). He also asserted that the State failed to give him thirty days' notice as required under Section 3.02(b) of the Penal Code.[4] *See* TEX. PENAL CODE ANN. § 3.02(b) (West 2011) (requiring written notice of not less than thirty days

---

[3]The record in cause number 16F0639-005 was not included in the record on appeal.

[4]On appeal, Coleman does not complain that the offenses were improperly joined or consolidated under Section 3.02 of the Texas Penal Code.

when the State intends to prosecute a single criminal action based on more than one charging instrument).

On January 9, the trial court held a hearing on Coleman's motions. At the hearing, Coleman informed the trial court that the State had provided him with the records from Child Protective Services (CPS) regarding the 2016 Offense, the 2014 Offenses, and the 2008–2009 allegations of sexual assault involving Thomas' sister, on the previous Wednesday. He described the records as voluminous. He also asserted that there was discovery still outstanding on the 2008–2009 assault cases that might contain mitigating and exculpatory evidence in those cases. Coleman argued that he would not be able to effectively cross-examine Thomas' sister, who was a witness in this case, without that discovery. Coleman failed to present any argument regarding the means by which he would be unfairly prejudiced if the 2014 Offenses were not severed. The trial court denied both motions.

On January 10, Coleman re-urged his motion for continuance before jury selection began, arguing that he had not received a CPS report from 2010 that may contain impeachment information. After the State informed the trial court that CPS would not provide those records without a subpoena duces tecum, the trial court again denied the motion. The trial court then held a hearing on the admissibility of evidence of the 2008–2009 sexual assaults in the guilt/innocence stage. After determining that the State had not given timely notice under Article 38.37 of the Code of Criminal Procedure, the trial court excluded this evidence from the guilt/innocence stage. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (West Supp. 2016).

4

## II.    Evidence at Trial

Thomas, who was fourteen years old at the time of trial, testified that she then lived in Arlington with her father.  In June 2014, she was visiting Texarkana and staying with her grandmother.  Thomas testified that she needed something from her mother's house and that Coleman, who was married to her mother, picked her up and took her to her mother's house.  When they arrived, Thomas went to the bathroom that was connected to her mother's bedroom.  While she was in the bathroom, Coleman came in the bedroom and locked the bedroom door.  When she came out, he began to chase her, and when he caught her, he pinned her to the bed with his forearm on her chest.  He took her pants off with his other hand, but her underwear remained on her.  She asked him why he was doing this, and he said, "Because I love you."  Coleman then began touching her vagina with his hand over her clothes and put his hand under her shirt and bra and touched her breasts.  At that point, her grandmother called and told Coleman to bring Thomas home, which he did.  Thomas was twelve years old at the time.

Thomas testified that she told her father what happened when she returned to Arlington.  Her father called the police in Texarkana, and she gave a statement to them and was interviewed at the Texarkana Children's Advocacy Center (CAC).

In the summer of 2016, Thomas was again visiting family in Texarkana and staying with her sister and her aunt.  One evening in June, her mother asked Thomas and her sister to come to her house to babysit her younger children.  Initially, Thomas was at the house with her sister, her sister's boyfriend, and the younger children.  When Coleman and her mother returned, her mother went to her bedroom.  Coleman went to the laundry room that was on one side of the kitchen, then

walked toward Thomas, who was sitting at the kitchen table wrapped in a comforter and wearing shorts and a t-shirt. When Coleman got to Thomas, he leaned over, put his hand under the comforter, grabbed her breasts, and said, "Wait until Monday or Tuesday. I'm going to give you what you want." She said that Coleman was in front of her at the time. Thomas testified that the younger children were in their room and that her sister and her sister's boyfriend were outside.

After her sister and her sister's boyfriend came inside and went to the extra bedroom, Thomas went to her sister and wrote down what happened. After her sister read it, they told her mother what Coleman had done. Thomas testified that after her father found out what happened, he picked her up the next evening and took her to the police to make a report. She stated that she was also interviewed at the CAC. On cross-examination, Thomas acknowledged that she told the CAC counselor in 2014 that Coleman had touched her over her clothing in both places. She also testified that she had a medical examination after the 2014 incident, but not after the one in 2016.

Thomas' sister, Adrian, testified that she and Thomas were asked to babysit at their mother's house on June 17, 2016. She testified that when Coleman returned to the house, she and her boyfriend were outside in a truck and Thomas, the younger children, and her mother were in the house. When she and her boyfriend came inside, Thomas was wrapped in a blanket using her mother's laptop computer. After they went to an extra bedroom, Thomas knocked on the door and said she wanted to tell Adrian something. Thomas wrote down what happened and gave it to Adrian, who read it. Adrian testified that while Thomas was in the room, Coleman was pacing around the house. After reading the note, Adrian, her boyfriend, and Thomas went outside to discuss it. While they were outside, Coleman came out several times, scolding Thomas for having

6

the blanket outside and for not turning off the computer and scolding all of them for being outside when it was so late. When they went back inside the house to tell their mother what had happened, Coleman packed a bag and left. Adrian also testified that she gave a statement to the police, and she confirmed that she and Thomas had been staying at her aunt's house.

The jury also heard the custodial statement that Coleman gave Detective Tabitha Colley of the Texarkana Police Department. In his statement, Coleman claimed that Thomas had been staying at the house for two weeks. He said that when he got home, Thomas was using the computer and the younger children were in the kitchen. Coleman sought to frame the problem that night as his concern that Adrian and her boyfriend were standing outside of the house at 1:30 in the morning playing music, and he stated that that was why he had packed a bag and gone to his sister's house. He denied touching Thomas' breasts and claimed that his wife and children were in the kitchen while he was cooking. He admitted that he would not have been working on Monday and Tuesday, but claimed that he would not have been at the house.

Missy Davidson, the program director at the CAC, testified that she conducted a forensic interview of Thomas on September 5, 2014, and that Thomas was also interviewed at the CAC in 2016. Davidson did not testify regarding the substance of the interviews, but testified that in both instances, Thomas answered the questions appropriately.

## III. No Abuse of Discretion in Denying the Motion for Continuance

In his first issue, Coleman contends that the trial court erred in denying his motion for continuance. We review the trial court's grant or denial of a motion for continuance using an abuse of discretion standard. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006) (citing

7

*Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995)). An abuse of discretion is shown only where the defendant shows that he was "actually prejudiced by the denial of his motion." *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (citing *Heiselbetz*, 906 S.W.2d at 511).

Coleman asserts that he was unable to adequately prepare for his defense because the CPS records from the 2014 Offenses were not produced until shortly before trial and that he had informed the trial court that he had good reason to believe some other non-produced CPS document contained either exculpatory or impeachment material. He also complains that the addition of the 2014 Offenses to the indictment did not occur until December 15. He contends that he was not required to respond to the new indictment until December 26, which left him only the week between Christmas and New Year's Day, and the following week, to prepare for trial.

However, the record shows that in his motion for continuance, Coleman acknowledged that he had received discovery on the 2014 Offenses on December 16. Although the State may not have produced the CPS records related to these offenses until the first week of January, Coleman has not shown that he was prevented from identifying or interviewing witnesses, or from obtaining the CPS records by subpoena at an earlier time. Further, Coleman's main complaint before the trial court was regarding the outstanding discovery related to the extraneous 2008–2009 sexual assaults involving Adrian. From his argument at trial, it appears that his assertion that he believed that some other CPS documents may contain exculpatory or impeachment material related to those extraneous offenses. As it turned out, the trial court excluded any evidence regarding those

8

extraneous offenses.[5] Further, Coleman has not shown that he was prevented from obtaining those records by subpoena.

In addition, the new indictment was handed down on December 15, 2016, and Coleman admits he was served with the indictment on December 16. Article 27.11 of the Texas Code of Criminal Procedure,[6] which gives the defendant ten days to file written pleadings, has been interpreted as guaranteeing the defendant ten days before he may be put to trial on the new indictment. *See Trevino v. State*, 900 S.W.2d 815, 817 (Tex. App.—Corpus Christi 1995, no pet.) (citing *Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983)). In this case, Coleman had twenty-four days to prepare for trial after the new indictment, so the requirements of Article 27.11 were satisfied. Further, the Texas Court of Criminal Appeals has held that without a showing of specific prejudice, no abuse of discretion is shown in the denial of a motion for continuance based on inadequate time to prepare when counsel was appointed twenty-four days before trial. *Hernandez v. State*, 643 S.W.2d 397, 399–400 (Tex. Crim. App. 1982). As in *Hernandez*, Coleman has shown no specific prejudice resulting from the trial court's denial of his motion for continuance. Consequently, we find that the trial court did not abuse its discretion, and we overrule Coleman's first issue.

---

[5]Coleman points to his trial counsel's rather brief cross-examination of Thomas regarding the 2014 Offenses as evidence of trial counsel's lack of time to properly prepare. However, we note that trial counsel's cross-examination regarding the 2016 Offense, for which there is no claim of inadequate preparation time, was at least as brief. That brief cross-examination could just as easily be explained as being the reasonable trial strategy of Coleman's trial counsel. Having successfully excluded any evidence regarding the extraneous sexual assaults against Thomas' sister because of the State's untimely notice under Article 38.37, trial counsel may have limited his cross-examination so that he did not open the door for the admission of that evidence.

[6]TEX. CODE CRIM. PROC. ANN. art. 27.11 (West 2006).

**IV.     No Abuse of Discretion in Denying the Motion for Severance**

In his second issue, Coleman complains that the trial court erred in denying his motion for severance of the 2014 Offenses.  Generally, when two or more offenses are joined or consolidated for trial, a defendant who timely objects to the joinder has a right to severance.  TEX. PENAL CODE ANN. § 3.04(a) (West 2011); *Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist] 2005, pet. ref'd) (citing *Salazar v. State*, 127 S.W.3d 355, 364 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing TEX. PENAL CODE ANN. §§ 3.02, 3.04(a)).  However, the right to severance does not apply to prosecutions for, *inter alia*, indecency with a child, "unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses."  TEX. PENAL CODE ANN. § 3.04(c) (West 2011); *see* TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (West Supp. 2016); *Matthews v. State*, 152 S.W.3d 723, 730 (Tex. App.—Tyler 2004, no pet.).  The defendant bears the burden of showing the way by which he would be unfairly prejudiced by the joinder of the cases.  *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.); *Lane*, 174 S.W.3d at 380.  Further, there is no presumption that the joinder of cases involving a child victim is unfairly prejudicial.  *Hodge*, 500 S.W.3d at 621; *Matthews*, 152 S.W.3d at 730–31.  To show unfair prejudice, "the defendant must show some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined."  *Casey v. State*, 349 S.W.3d 825, 832 (Tex. App.—El Paso 2011, pet. ref'd); *Hodge*, 500 S.W.3d at 622.

We review a trial court's grant or denial of a motion for severance for an abuse of discretion.  *Hodge*, 500 S.W.3d at 621; *Matthews*, 152 S.W.3d at 730.  We will not interfere with its ruling as long as it is "within the zone of reasonable disagreement."  *Lopez v. State*, 86 S.W.3d

10

228, 230 (Tex. Crim. App. 2002) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

At trial, although Coleman asserted in his motion that he would be unfairly prejudiced by the joinder of the 2014 Offenses, he did not explain to the trial court (either in his motion or at the hearing on his motion) how he would be prejudiced beyond that which any defendant would be in a case in which felony counts are joined. On appeal, Coleman complains that the trial court did not indicate on the record the basis of its determination that the joinder would not be unfairly prejudicial. However, since Coleman did not make any argument showing how joinder would be unfairly prejudicial, it was unnecessary for the trial court to express its reason for denial on the record.

Coleman also complains on appeal that the joinder subjected him to being convicted for the 2016 Offense because the jury thought he was a bad man who deserved to be punished for his misdeeds, or that it inferred his guilt because he committed other crimes. *See Llamas v. State*, 12 S.W.3d 469, 471–72 (Tex. Crim. App. 2000). However, this argument claims no more than that he faced the type of prejudice any defendant faces in a case in which felony counts are joined. *Casey*, 349 S.W.3d at 832. Since Coleman did not show that he would be unfairly prejudiced by the joinder of the offenses, we find that the trial court did not abuse its discretion in denying his motion for severance. *See id.*; *Lane*, 174 S.W.3d at 380. We overrule Coleman's second issue.

## V. Sufficient Evidence Supports Coleman's Conviction for the 2016 Offense

In his third issue, Coleman contends that there is legally insufficient evidence to support his conviction of the 2016 Offense. In evaluating legal sufficiency, we review all the evidence in

the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous review of legal sufficiency focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)).

Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

12

design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. In this case, to obtain a conviction for indecency with a child by sexual contact, the State was required to show beyond a reasonable doubt that on or about June 17, 2016, Coleman, (1) with intent to arouse or gratify his sexual desire, (2) intentionally or knowingly (3) touched Thomas' breast (4) while Thomas was younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1). In the context of indecency with a child, the touching of the breast includes touching through clothing. *See* TEX. PENAL CODE ANN. § 21.11(c)(1) (West 2011).

Coleman only challenges the sufficiency of the evidence showing he touched Thomas' breast. He argues that it would have been physically impossible for Thomas to be sitting in front of a computer at the kitchen table and for him to also be standing in front of her, reach through the

13

comforter, and touch her breast. Although this may be a possible inconsistency in Thomas' testimony, a rational jury could resolve any inconsistency and reasonably find that Coleman reached under the comforter and touched Thomas' breast. Thomas testified that she was sitting at the kitchen table when Coleman came over to her, leaned over, put his hand under the comforter, and touched her breasts. When asked whether Coleman was in front of her or behind her when he did this, she replied, "In front of me." That answer does not necessarily mean that Coleman was standing directly in front of her. Rather, a rational jury could reasonably infer, considering the totality of Thomas' testimony, that Coleman was standing to the side and somewhat in front of Coleman and that when he leaned over to put his hand under the comforter, the upper part of his body was in front of Thomas. Further, since Thomas did not state whether Coleman reached under her t-shirt, the jury could reasonably infer that he (at the least) touched her breast through her t-shirt. A conviction under Chapter 21 of the Penal Code, including indecency with a child, may be supported by the uncorroborated testimony of a child victim. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West Supp. 2016); *State v. Dudley*, 223 S.W.3d 717, 726 (Tex. App.—Tyler 2007, no pet.); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd). We find that there is sufficient evidence to support Coleman's conviction for the 2016 Offense,[7] and we overrule his third point of error.

---

[7]Although not challenged, we note that Thomas' testimony would also support the jury's findings regarding the other elements of the offense.

14

For the reasons stated, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     October 30, 2017
Date Decided:       November 2, 2017

Do Not Publish