**Affirmed and Opinion filed July 18, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00148-CR

### JOHNNY RAY RYDER, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 79985-CR**

## O P I N I O N

A jury found Appellant Johnny Ray Ryder, Jr. guilty of four counts of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021 (Vernon 2019). The jury sentenced Appellant to four life sentences; the trial court's final judgment states that these life sentences are to run consecutively. In three issues, Appellant asserts (1) the evidence is insufficient to support the convictions; (2) the trial court erred by admitting evidence of certain extraneous offenses; and (3) the

trial court erred by admitting Facebook messages that were not properly authenticated. For the reasons below, we affirm.

## BACKGROUND

Appellant was arrested and charged with four counts of aggravated sexual assault of a child. Appellant proceeded to a jury trial in February 2018.

Complainant, Appellant's daughter, testified at trial. Complainant met Appellant for the first time when she was 13 years old, after having been removed from her mother's custody by the Texas Department of Family and Protective Services ("DFPS"). Complainant moved into Appellant's Lake Jackson house in the summer of 2013; Complainant lived at the house with Appellant, Appellant's wife Tiana Ryder, and Tiana's son.[1]

Complainant testified in detail regarding two incidents of sexual assault that form the basis of Appellant's convictions. The first incident occurred in December 2013, when Complainant was 13 years old. According to Complainant, a Christmas party was held at Appellant's house during which she was given alcohol. Complainant recalled drinking too much and said she went to the bathroom in her bedroom to vomit.

Stating that she "was really drunk" and that "[e]verything was dizzy," Complainant said she walked out of the bathroom and was met by Appellant. According to Complainant, Appellant asked her if she "was okay" and if she was "having a good time." Complainant testified that Appellant hugged her and started rubbing her back and butt. According to Complainant, Appellant told her he "had a surprise" for her and showed her a bottle of strawberry lubrication. At some point, Appellant took off his necklace that had his wedding ring on it and Tiana

---

[1] Because Tiana shares the same last name as Appellant, we refer to her by her first name to avoid confusion.

2

became upset and was mad at Appellant about it.

Appellant and Complainant walked out of Complainant's bedroom and into Appellant's bedroom. Appellant and Complainant lay on the bed; Tiana walked into the bedroom and lay on the bed with Appellant and Complainant. Complainant was in the middle of the two adults. Complainant said Appellant opened the lube and let her "taste it and Tiana, both of us." Complainant testified that Appellant and Tiana "started making out over the top" of her while Appellant was "rubbing on [her] leg." Complainant said Appellant instructed her to take off her shorts. Complainant took off her shorts and sat down on the bed; Appellant kept trying to get her to come in a little. "Like he would reach over and rub [her] leg and try to get [her] to join in." Appellant and Tiana were on their knees on the bed kissing and Appellant reached for Complainant and pulled her into the bed. Appellant and Tiana starting kissing Complainant and she also kissed Tiana.

Complainant testified that Tiana walked out of the bedroom and told the remaining party guests to leave the house. While Tiana was out of the bedroom, Complainant said Appellant took off her shirt and underwear and performed oral sex on her. Tiana returned to the bedroom and, according to Complainant, "it started getting really heated." Complainant was on the bed and Tiana was on her knees performing oral sex on the Complainant at the same time that Appellant was having "doggy style"[2] sex with Tiana. Appellant then had sex with Complainant, putting his penis in her vagina and anus. While Appellant was having sex with Complainant, Tiana "was trying to get in front of" Complainant and "wanted" Complainant to perform oral sex. Tiana laid down on the bed and Complainant, on her knees, performed oral sex on Tiana while Appellant was having "doggy style"

---

[2] Complainant described "doggy style" sex as sex where the man penetrates the woman from behind. While we normally strive not to graphically describe sexual activities in our opinion, given the causation issue, we do so here.

sex with Complainant.

Complainant testified that her stomach started to hurt and she felt dizzy, after which she fell off the bed. Complainant said Appellant and Tiana gave her a pillow and blanket and she "laid there on the floor for a little while." Complainant slept for a short while before returning to her bedroom.

Complainant testified about a separate incident that occurred several days later at a New Year's Eve party held at Appellant's house. Complainant said she was drinking alcohol in the living room when Appellant and Tiana "started kissing." Complainant said "Tiana came over . . . and started kissing on me, like you can get in, too. Don't be afraid." Complainant testified that she went in Appellant's bedroom with Appellant and Tiana and "pretty much the same thing happen[ed]." Complainant said she again had sexual intercourse with Appellant during which he put his penis in her vagina. Appellant then had sexual intercourse with Tiana, during which he rubbed Complainant's clitoris and put his fingers inside her vagina. Complainant testified that the incident lasted for "maybe an hour." Afterwards Appellant, Complainant, and Tiana returned to the living room and watched the New Year's Eve ball drop on television.

Complainant testified regarding her interactions with Appellant after the incidents at the Christmas party and New Year's Eve party discussed above; this testimony described several of the extraneous offenses Appellant challenges on appeal. These incidents are summarized as follows:

- Appellant had a "sit-down" with Complainant and Tiana to "talk about everything that happened." During the sit-down, Appellant, Complainant, and Tiana discussed "basically like rules . . . like we had to find a compromise between us two where [Appellant] could get what he want[ed] and [Complainant] [could] still get stuff that [she] want[ed]." Complainant agreed to provide Appellant "sexual things" in exchange for "little freedoms" like going to beach parties, spending

4

the night at friends' houses, and smoking marijuana. Complainant was told she could not tell anyone about the sexual encounters.

- During some sexual encounters, Complainant would urinate on Appellant. While she was urinating, Appellant would masturbate and "sometimes . . . stick his finger up [Complainant's] vagina."

- Complainant was required to give Appellant her underwear at the end of the day. Appellant would put Complainant's underwear on her stuffed frog, which he would use while masturbating.

- Complainant described "quickies" with Appellant, where he would have sexual intercourse with her at "random moments."

- While he was masturbating, Appellant would instruct Complainant to insert a phallic instrument into his anus.

- Appellant gifted Complainant a sex toy during Christmas 2014.

- Complainant said Appellant "had a lot" of sex toys that they used "on some occasions."

Complainant said her sexual relationship with Appellant lasted "[f]or most of 2014 going into 2015." In July 2015, Complainant started dating J.V., whom she knew through work and school.[3] J.V. moved in to Appellant's house that same month. Complainant said Appellant was "jealous" of her relationship with J.V. and told her she "spent too much time with" J.V. According to Complainant, Appellant wanted J.V. to move out of the house and gave him "formal notice to vacate" in March 2016.

On March 28, 2016, Complainant and J.V. went to the Lake Jackson police station and Complainant reported Appellant's actions to Detective Rachel Pierce. Detective Pierce collected Complainant's cell phone and photographed sexually-explicit messages sent from Appellant to Complainant on Facebook Messenger. These photographs of Appellant's and Complainant's messages were admitted into

---

[3] Because J.V. was a minor when the underlying offenses were committed, we refer to him using an alias. *See* Tex. R. App. P. 9.10(a)(3), (d).

5

evidence at Appellant's trial.

Complainant also testified regarding the DFPS caseworkers with whom she had worked, stating she "had like three or four" caseworkers during the time she lived at Appellant's Lake Jackson house. Complainant said she did not report the sexual abuse to any of the caseworkers except Leonor Salazar. Complainant said she met with Salazar in February 2014 and told Salazar she "had been sexually assaulted by [Appellant]." Complainant testified that Salazar told her that she was lying. Afterwards, Complainant said she made up her mind that she "wasn't going to tell anybody else" because she "didn't want to go back into a foster family."

Ten additional witnesses testified at Appellant's trial — relevant portions of their testimony are summarized below.

- Crystal Wilson, a DFPS investigator. Wilson met with Complainant after Complainant disclosed the sexual abuse allegations to Detective Pierce. After meeting with Complainant, Wilson interviewed Appellant twice. Wilson discussed with Appellant the "sexual nature" of the messages he sent Complainant. After reviewing one of the messages, Wilson testified that Appellant admitted to sending the message and said it "was a joke."

- Kristi Bellomini, a forensic interviewer at the Brazoria County Alliance for Children. Bellomini interviewed Complainant on March 31, 2016. Complainant discussed the sexual incidents with Bellomini; Bellomini testified that Complainant "was very detailed with what it was that she shared with me." On cross-examination, Bellomini testified that Complainant did not discuss an incident that occurred on New Year's Eve.

- Leslie Klug, cast manager at Fearshire Farms, a haunted house in Angleton, Texas. Klug worked with Appellant at Fearshire Farms. On one occasion, Klug used Appellant's phone and found on the phone "some emails and some pictures that concerned" her. Klug passed this information on to Detective Pierce.

6

- **Detective David Hawkins**, with the Lake Jackson Police Department. Detective Hawkins assisted with executing a search warrant at Appellant's house on March 31, 2016. Detective Hawkins testified regarding the numerous sex toys found at Appellant's house.

- **Detective Stephen Bailey**, with the Lake Jackson Police Department. Detective Bailey also testified regarding the search warrant executed at Appellant's house on March 31, 2016.

- **Detective Rachel Pierce**, with the Lake Jackson Police Department. Detective Pierce testified regarding her meeting with Complainant on March 28, 2016. Detective Pierce said she "collected [Complainant's] phone at that time and . . . also took some photographs from her Facebook account." Detective Pierce also discussed the search warrant executed at Appellant's house. On cross-examination, Detective Pierce acknowledged that (1) Complainant did not discuss the New Year's Eve incident with her; (2) Complainant did not say anything about "tasting some type of lubricant along with Tiana;" and (3) she was not able to verify that Complainant had told a DFPS caseworker about the sexual incidents.

- **Stacy Casey**, a DFPS caseworker at the Angleton office. Casey testified that she had home visits with Complainant "several years ago" and met with Complainant approximately 12 times at Appellant's house. Casey testified that she did not "see any sex toys laying out in the open" at Appellant's house.

- **Leonor Salazar**, a DFPS caseworker in San Antonio. Salazar testified that Complainant did not tell her about the sexual abuse allegations. Salazar denied telling Complainant she was lying about the allegations.

The jury returned a verdict finding Appellant guilty of four counts of aggravated sexual assault. For each count, the jury sentenced Appellant to life in prison; the trial court's final judgment states that these sentences are to run consecutively. Appellant timely appealed.

7

In three issues, Appellant asserts (1) the evidence is insufficient to support the aggravated sexual assault convictions; (2) the trial court erred by admitting evidence of Appellant's extraneous offenses; and (3) the trial court erred by admitting Facebook messages that were not properly authenticated. We address these issues below.

## I. Sufficient Evidence Supports Appellant's Aggravated Sexual Assault Convictions.

The jury found Appellant guilty with respect to four counts of aggravated sexual assault of a child:

1. On or about December 23, 2013, Appellant intentionally or knowingly caused the sexual organ of Complainant, a child younger than 14 years of age and not the Appellant's spouse, to contact Appellant's sexual organ.

2. On or about December 23, 2013, Appellant intentionally or knowingly caused the anus of Complainant, a child younger than 14 years of age and not the Appellant's spouse, to contact Appellant's sexual organ.

3. On or about January 3, 2014, Appellant intentionally or knowingly caused the sexual organ of Complainant, a child younger than 14 years of age and not the Appellant's spouse, to contact Tiana Ryder's mouth.

4. On or about January 3, 2014, Appellant intentionally or knowingly caused the mouth of Complainant, a child younger than 14 years of age and not the Appellant's spouse, to contact Tiana Ryder's sexual organ.

Appellant argues the evidence is legally insufficient to support his convictions.

### A. Standard of Review

To assess the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences

therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lashley v. State*, 401 S.W.3d 738, 743 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *see also Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We instead "give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

The jury is permitted to draw multiple reasonable inferences from facts as long as each inference is supported by the evidence presented at trial. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination." *Id.* (citing *Jackson*, 443 U.S. at 326).

Each fact need not point directly and independently to the defendant's guilt as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is equally as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to support a conviction. *Id.*

**B.  Legally Sufficient Evidence Supports the Jury's Verdicts With Respect to Counts One and Two.**

Appellant argues the jury's "guilty" verdicts with respect to Counts One and Two are supported only by Complainant's testimony. Appellant argues Complainant's testimony is outweighed by the following considerations:

9

1. In her testimony, Salazar denied that Complainant disclosed to her the sexual abuse allegations. Salazar also denied calling Complainant a liar.

2. Appellant asserts Complainant's allegations were retaliation for J.V.'s eviction. At trial, Complainant testified that she was "very upset" when Appellant gave J.V. notice to vacate Appellant's house.

3. Appellant asserts Complainant had numerous DFPS caseworkers but did not disclose to them the sexual abuse allegations. Caseworker Casey testified that Complainant did not tell her about any sexual incidents with Appellant.

4. Appellant points out that, although several people attended the 2013 Christmas party at his house, "[n]o witness from the Christmas party" came forward regarding the alleged sexual incident.

5. Complainant's testimony differed from the allegations she reported to Detective Pierce. In her testimony, Detective Pierce acknowledged Complainant did not tell her about the incident on New Year's Eve or tell her that Appellant made Complainant taste lubricant.

The essential elements of aggravated sexual assault of a child are outlined in Texas Penal Code section 22.021. A person commits the offense "if the person intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means . . . [and] the victim is younger than 14 years of age." Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). Under Texas law, the uncorroborated testimony of a child victim, standing alone, is sufficient to support a conviction for aggravated sexual assault. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *see also Lane v. State*, 174 S.W.3d 376, 386 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); and *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Here, Complainant testified that, during a December 2013 Christmas party at Appellant's house, Appellant met her in her bedroom, hugged her, and started rubbing her back and butt. Appellant told Complainant he "had a surprise" for her and showed her a bottle of strawberry lubrication. Appellant and Complainant

walked into Appellant's bedroom and lay on the bed; they were joined by Tiana. Appellant and Tiana started "making out over the top" of Complainant while Appellant rubbed Complainant's leg. Appellant instructed Complainant to take off her shorts and Appellant and Tiana started kissing Complainant. Complainant testified that Appellant proceeded to have sex with her and put his penis in her vagina and anus.

Complainant testified about a separate incident that occurred several days later at a New Year's Eve party held at Appellant's house. Complainant testified that she went into Appellant's bedroom with Appellant and Tiana and "pretty much the same thing happen[ed]." Complainant said Appellant "put his penis in [her] vagina."

The jury heard additional testimony from Complainant discussing separate sexual incidents with Appellant. The jury also heard testimony from other witnesses that provides circumstantial evidence supporting Complainant's allegations:

- Investigator Wilson testified that she met with Appellant after Complainant disclosed the sexual abuse allegations. Investigator Wilson discussed with Appellant the "sexual nature" of the messages he sent Complainant. After reviewing one of the messages, Investigator Wilson testified that Appellant admitted to sending the message and said it "was a joke."

- Bellomini and Detective Pierce testified regarding the statements Complainant made to them about the sexual abuse allegations.

- Complainant and Detective Pierce also testified regarding numerous sexually-explicit Facebook messages sent from Appellant to Complainant.

- Detective Hawkins and Detective Bailey testified regarding the search warrant executed at Appellant's house on March 31, 2016. The detectives identified several pieces of evidence that corroborated Complainant's allegations.

11

The State's exhibits 1-30 also were admitted into evidence and include numerous Facebook messages between Appellant and Complainant, many of which contain sexually-explicit pictures and statements. The entirety of this evidence, considered in the light most favorable to the verdict, is sufficient to support the jury's "guilty" verdicts with respect to Counts 1 and 2. *See Garcia*, 563 S.W.2d at 928; *Lane*, 174 S.W.3d at 386; and *Jensen*, 66 S.W.3d at 534.

To support his sufficiency challenge, Appellant points to alleged inconsistencies between Complainant's testimony and other evidence. Appellant also asserts Complainant's disclosure of the allegations was retaliation for J.V.'s eviction. But these arguments primarily concern Complainant's credibility as a witness. *See, e.g., Moody v. State*, 543 S.W.3d 309, 314 (Tex. App.—Eastland 2017, pet. ref'd); and *Tran v. State*, 221 S.W.3d 79, 88 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We defer to the jury's responsibility to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences, and we do not disturb these determinations on appeal. *See Hooper*, 214 S.W.3d at 13.

We overrule Appellant's legal sufficiency challenges to the jury's "guilty" verdicts with respect to Counts 1 and 2.

### C. Legally Sufficient Evidence Supports the Jury's Verdicts With Respect to Counts Three and Four.

Appellant summarily asserts the jury's "guilty" verdicts with respect to Counts 3 and 4 are not supported by legally sufficient evidence because "Tiana freely participated in the sex," Complainant never testified that Appellant caused Tiana to have sex with her, and "[t]he State never argued that Appellant was a party to Tiana's criminal behavior." Appellant does not cite any case law or other authority to support his challenge.

As relevant to this analysis, Texas Penal Code section 22.021 states that a defendant commits aggravated sexual assault if the defendant intentionally or knowingly (1) "causes the sexual organ of a child to contact or penetrate the mouth . . . of another person," or (2) "causes the mouth of a child to contact the . . . sexual organ of another person." Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (v). We construe Appellant's argument regarding Counts 3 and 4 as a challenge to causation. There are very few cases discussing section 22.021(a)(1)(B)(iii) and (v).

However, Appellant is focusing on the wrong causal element. The statute does not require that the State prove that Appellant caused Tiana to engage in oral sex with the Complainant. Instead the statute focuses on whether Appellant caused the sexual organ of a child to contact the mouth of another or whether he caused the child to contact the sexual organ of another.

Under the Texas Penal Code, "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id*. § 6.04 (Vernon 2011). This standard requires that a "but for" causal connection be established between the defendant's conduct and the resulting harm. *See id*.; *see also Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986); and *Wooten v. State*, 267 S.W.3d 289, 295 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). When concurrent causes are present, the "but for" requirement is satisfied if either (1) the defendant's conduct by itself is sufficient to have caused the harm; or (2) the defendant's conduct coupled with another cause is sufficient to have caused the harm. *Robbins*, 717 S.W.2d at 351; *Wooten*, 267 S.W.3d at 296. But "[i]f the additional cause, other than the defendant's conduct, is clearly sufficient, by itself,

13

to produce the result *and* the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted." *Robbins*, 717 S.W.2d at 351 (emphasis in original).

The existence of a causal connection is a question for the jury's determination. *Fountain v. State*, 401 S.W.3d 344, 358 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The jury may rely on circumstantial evidence to establish this causal connection. *Garcia v. State*, 112 S.W.3d 839, 852 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Complainant testified that she was intoxicated when Appellant approached her in her bedroom at the December 2013 Christmas party. Appellant encouraged her to drink at the party. Appellant initiated the sexual activity between Complainant, Tiana, and himself. While Appellant and Tiana were making out, Appellant rubbed on Complainant's leg and instructed her to take off her shorts. Tiana left the room and, while she was out, Appellant continued to encourage Complainant's participation by removing her shirt and performing oral sex on her. Tiana returned to the bedroom and, while she had sex with Appellant, Tiana performed oral sex on Complainant. And while Appellant had sex with Complainant, Complainant performed oral sex on Tiana.

Other circumstantial evidence of causation came after the described events. At first, Tiana was involved in other sexual encounters with Appellant and Complainant, but there were also sexual encounters that involved only Appellant and Complainant. Complainant never testified to any sexual encounter occurring with Tiana without Appellant. Tiana also became jealous of the time that Appellant spent having sex with Complainant. From this a rational jury could infer that it was Appellant who proximately caused the Complainant's sexual organ to contact the mouth of Tiana.

14

Viewing this evidence in the light most favorable to the verdict, a reasonable juror could conclude that Appellant (1) caused Complainant's sexual organ to contact Tiana's mouth, and (2) caused Complainant's mouth to contact Tiana's sexual organ. *See* Tex. Penal Code Ann. §§ 6.04; 22.021(a)(1)(B)(iii), (iv); *see also Robbins*, 717 S.W.2d at 351; *Wooten*, 267 S.W.3d at 295-96.

Moreover, even though Tiana's conduct operated as a concurrent cause with respect to the underlying offenses in Counts 3 and 4, the evidence does not show that Tiana's conduct alone was "clearly sufficient, by itself," in order to negate the element of causation. *See* Tex. Penal Code Ann. § 6.04; *Robbins*, 717 S.W.2d at 351. Tiana and Complainant performed oral sex on each other only after Appellant (1) initiated the sexual encounter, (2) instructed Complainant to remove her clothes, (3) performed oral sex on Complainant, and (4) escalated the encounter to include sexual intercourse. Reviewing this evidence, a reasonable juror could conclude that the harm underlying Counts 3 and 4 was the result of Appellant's conduct coupled with Tiana's. *See Robbins*, 717 S.W.2d at 351; *see also Wooten*, 267 S.W.3d at 296.

We overrule Appellant's legal sufficiency challenges to the jury's "guilty" verdicts with respect to Counts 3 and 4.

## II. The Trial Court Did Not Err by Admitting Evidence of Extraneous Offenses.

Challenging the trial court's admission of 17 extraneous offenses, Appellant argues the evidence was "more prejudicial than probative because the State's purpose of admitting these extraneous offenses were [sic] purely inflammatory and hardly probative and relevant."[4] *See* Tex. R. Evid. 403. But as the State points out

---

[4] As necessary to preserve this issue for appellate review, Appellant raised his Rule 403 objection at trial and received a ruling. *See* Tex. R. App. P. 33.1(a).

15

in its brief, the jury only heard evidence with respect to ten of these offenses.[5]  We therefore examine Appellant's challenge with respect to these ten offenses, which we summarize below:

1. Complainant urinated on Appellant at his request.

2. Appellant performed oral sex on Complainant.

3. Appellant masturbated while touching Complainant.

4. Appellant kept Complainant's underwear to use while masturbating.

5. Appellant instructed Complainant to insert a phallic instrument into his anus.

6. Appellant required Complainant to have sex with him in exchange for the ability to go places and participate in activities with friends.

7. Appellant had "quickies" with Complainant when Tiana was not in the room.

8. Appellant allowed Complainant to drink alcohol and use drugs.

9. While executing a search warrant, police found various sex toys at Appellant's house.

10. Appellant gifted Complainant a sex toy during Christmas 2014.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Evidence of extraneous offenses generally is not admissible at the guilt-

---

[5] Appellant also challenges the admission of evidence that he performed oral sex on Tiana in front of Complainant and J.V.  But when Complainant brought this issue up in her testimony at trial, defense counsel objected under Texas Rules of Evidence 403 and 404(b) and the trial court sustained the objection.  Defense counsel did not request further relief after the objection was sustained.  Because Appellant received all the relief he requested, he did not preserve this issue for appellate review.  *See Caron v. State*, 162 S.W.3d 615, 617 (Tex. App.— Houston [14th Dist.] 2005, no pet.).

innocence phase of trial to prove that a defendant acted in conformity with his criminal nature and character. Tex. R. Evid. 404(b); *see also Beam v. State*, 447 S.W.3d 401, 403 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But when a defendant is charged with the sexual assault of a child, evidence of a previous offense or bad act involving the same child may be admissible under article 38.37 of the Texas Code of Criminal Procedure, which states:

> [E]vidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37 § 1(b) (Vernon Supp. 2018); *see also Beam*, 447 S.W.3d at 403.

By its terms, article 38.37 permits the introduction of extraneous offense evidence notwithstanding the limitations imposed by Texas Rule of Evidence 404(b). *See* Tex. R. Evid. 404 (extraneous offense evidence inadmissible "to prove a person's character," but admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). But setting aside the issue of admissibility under article 38.37, the extraneous offenses listed above also would have been admissible under Rule 404(b) as evidence of Appellant's motive with respect to the charged offenses. *See id*.

When evidence of a defendant's extraneous acts is relevant and admissible under article 38.37 and/or Tex. R. Evid. 404(b), the trial court still is required to conduct a Rule 403 balancing test in response to a proper objection or request. *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Rule 403 authorizes a trial court to exclude relevant evidence if its

17

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403; *see also id.* Rule 403 favors the admissibility of relevant evidence and it is presumed that relevant evidence will be more probative than prejudicial. *Beam*, 447 S.W.3d at 404-05. We consider the following factors when analyzing a Rule 403 challenge on appeal: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* at 405 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)).

Beginning with the first factor, the extraneous offense evidence was offered to support a disputed fact: whether Appellant sexually assaulted Complainant. At trial, defense counsel elicited testimony highlighting discrepancies in Complainant's testimony and argued to the jury that Complainant lied about her interactions with Appellant. Evidence of Appellant's extraneous acts therefore was probative to rebut Appellant's theory that Complainant fabricated her allegations. *See Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Beam*, 447 S.W.3d at 404-05. This factor weighs in favor of admission.

The second Rule 403 factor requires us to consider whether the extraneous offense evidence had the potential to irrationally impress the jury. Here, most of the extraneous offenses were similar to the charged offenses in that they involved sexual contact between Appellant and Complainant. "Whenever the extraneous offense is similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity." *Beam*, 447 S.W.3d at 405. But the impermissible inference of character conformity was minimized by the inclusion of a limiting instruction. *See Lane v. State*, 933

S.W.2d 504, 520 (Tex. Crim. App. 1996). Moreover, Appellant did not demonstrate how the extraneous offense evidence was any more heinous than the evidence pertaining to the charged offenses. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (holding any potential to suggest a decision on an improper basis was ameliorated somewhat by the fact that the extraneous offense testimony was "no more serious than the allegations forming the basis of the indictment"). This factor weighs in favor of admission.

The third factor evaluates the time during trial that the proponent required to develop the evidence of the extraneous offenses. Testimony discussing the extraneous offenses took approximately 20 pages of the State's case-in-chief, which totaled over 450 pages. This factor weighs in favor of admission.

The final factor examines the proponent's need for the extraneous offense evidence. Here, the State's need was strong because the fact at issue was whether Appellant committed the underlying sexual assaults. *See Lane*, 933 S.W.2d at 521 (holding that the need for extraneous offense evidence is greatest when the evidence supported an element of a "hotly contested issue"). This factor weighs in favor of admission.

Balancing all of the Rule 403 factors, we conclude the trial court acted within the zone of reasonable disagreement when it determined that the probative value of the extraneous offense evidence was not substantially outweighed by its prejudicial effect. We overrule Appellant's second issue.

III.     **The Trial Court Did Not Err by Admitting the Facebook Messages Into Evidence.**

In his third issue, Appellant challenges the admission into evidence of (1) the State's exhibits 1-30, which are photographs of the Facebook Messenger messages Complainant showed Detective Pierce on March 28, 2016, and (2) the

State's exhibits 37, 37-A, and 37-B, which are Facebook's business records pertaining to the messages in exhibits 1-30. Appellant argues these exhibits were not properly authenticated.

We review the trial court's admission of evidence for an abuse of discretion. *Martinez*, 327 S.W.3d at 736. To properly authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a); *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Whether the proponent has crossed this threshold is a preliminary determination for the trial court. Tex. R. Evid. 104(a); *see also Tienda*, 358 S.W.3d at 638. Evidence is properly authenticated if the proponent supplies "facts that are sufficient to support a reasonable jury determination that the evidence he had proffered is authentic." *Tienda*, 358 S.W.3d at 638. "The proponent of the evidence does not need 'to rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the evidence is what it purports to be.'" *Jones v. State*, 572 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2019, no pet. h.) (quoting *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.)).

Rule 901 provides a non-exclusive list of methods for the authentication of evidence, including witness testimony, appearance, contents, substance, or other distinctive characteristics taken in conjunction with circumstances. Tex. R. Evid. 901(b); *see generally Campbell*, 382 S.W.3d at 549 (noting that Rule 901 "does not erect a particularly high hurdle" and may be satisfied by circumstantial evidence (internal quotation omitted)).

Here, the State's exhibits 1-30 were properly authenticated through witness testimony and circumstantial evidence, including the contents and characteristics of the messages themselves. Before exhibits 1-30 were admitted, Complainant

20

testified that (1) the exhibits were the same images that she showed Detective Pierce and allowed her to photograph, and (2) the contents of the messages were "something that would be between [her] and [Appellant]." Exhibits 1-30 also show (1) all the messages were sent by a Facebook profile belonging to a person named "John Ryder;" (2) on exhibit 1, the message shows that "John Ryder" is employed at "Fearshire Farms" and lives in Lake Jackson; (3) many of the exhibits contain sexually-explicit pictures and statements; (4) in the pictured messages in exhibits 8, 17, and 25, the sender refers to the recipient as his "daughter;" (5) in the pictured messages in exhibits 12 and 25, the sender refers to himself as "dad;" (6) the messages mention other interactions discussed in Complainant's testimony, including Appellant's use of Complainant's underwear to masturbate; and (7) the messages discuss the amount of time Complainant was spending with J.V. This evidence is sufficient to support a reasonable jury determination regarding the authenticity of the State's exhibits 1-30. *See, e.g., Campbell*, 382 S.W.3d at 553; *see also Laurentz v. State*, No. 01-12-00269-CR, 2013 WL 5604740, at *4-5 (Tex. App.—Houston [1st Dist.] Oct. 10, 2013, no pet.) (mem. op., not designated for publication).

The State's exhibits 37, 37-A, and 37-B also were properly authenticated. These exhibits contain (1) Facebook's business records pertaining to the messages in exhibits 1-30, and (2) a "Certificate of Authenticity of Domestic Records of Regularly Conducted Activity." This Certificate of Authenticity sufficiently complies with the requirements of self-authentication outlined in Rule 902(10)(B), obviating the State's need to produce additional extrinsic evidence to satisfy the authentication threshold. *See* Tex. R. Evid. 902(10)(B); *see also Murray v. State*, 534 S.W.3d 540, 545 (Tex. App.—San Antonio 2017, no pet.).

We overrule Appellant's third issue.

## CONCLUSION

We overrule Appellant's issues on appeal and affirm the trial court's judgment.

/s/    Meagan Hassan
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.

Publish — Tex. R. App. P. 47.2(b).